JODI LINKER
Federal Public Defender
Northern District of California
KAITLYN FRYZEK
Assistant Federal Public Defender
13th Floor Federal Building - Suite 1350N
1301 Clay Street
Oakland, CA 94612
Telephone:  (510) 637-3500
Facsimile:  (510) 637-3507
Email:      Kaitlyn _Fryzek@fd.org

Counsel for Defendant Ikharo

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ISHAQ IKHARO,<br><br>Defendant. | **Case No.:** CR–24-60 YGR (DMR)<br><br>**AMENDED MOTION TO RECONSIDER DETENTION OR, ALTERNATIVELY, FOR HEARING ON CONDITIONS OF TRANSPORTATION AND CONFINEMENT**<br><br>**Court:** Courtroom 4, 3rd Floor |

This amended motion is filed pursuant to the Clerk's Notice at Dkt. 24. Defense counsel sincerely apologizes for the oversight. Under the Bail Reform Act, when new information comes to the court's attention, the court may reopen a bail hearing. 18 U.S.C. § 3142(f). The defense believes that there is new information that has come to light since the last hearing, which resulted in this Court's detention order, regarding both prospective conditions of confinement and the conditions of transportation. Accordingly, under § 3142(f), there is new information and this Court could reopen the bail determination. With this Court's permission this filing incorporates all previously-filed exhibits and the declaration of counsel, including the exhibits filed under seal.

**INTRODUCTION**

As noted in the prior-filed motion for reconsideration, this Court is familiar with the history of the detention proceedings in this case. On May 9, 2025, this Court issued an oral detention order indicating that Mr. Ikharo would be detained, likely at Pulaski County Detention Center in Mound City, Illinois, due to his medical condition. Further proceedings were held on May 13, 2025, and the Court instructed the U.S. Marshals office to begin plans to transport Mr. Ikharo. On May 14, 2025, the Court issued a written detention order instructing the U.S. Marshals office coordinate Mr. Ikharo's transportation to the facility and provide counsel with 48 hours' notice when those plans are in place. The case is on calendar on May 22, 2025, for a status update as to Mr. Ikharo's transportation to the facility.

Mr. Ikharo is paraplegic, lacking movement or control of his body below the upper chest. As a result, his daily life involves various complicated medical processes, particularly for expelling urine and feces. At home, he requires daily assistance from family members, and one of his brothers works as his In-Home Supportive Services (IHSS) caregiver.

Defense counsel provided medical documentation of and information concerning Mr. Ikharo's medical concerns to the U.S. Marshals on April 30 and May 1, 2025. *See* Declaration of Kaitlyn Fryzek ["Fryzek Dec."] ¶ 2. On May 13, 2025, after the Court ordered the U.S. Marshals to plan for Mr. Ikharo's transport, defense counsel emailed the Supervisory Deputy for the U.S. Marshals inquiring about the medical equipment and care that would be provided at the facility in Illinois and during transport. *Id.* ¶ 3. On May 16, 2025, defense counsel called and spoke with the Supervisory Deputy at the U.S. Marshals and learned some information about the plans for transporting Mr. Ikharo to Illinois. *Id.* ¶ 4.

Defense counsel's concerns regarding the plan for Mr. Ikharo's transport and his housing at the facility in Illinois are twofold: (1) the identified method of transportation to the facility is likely to present serious medical risks to Mr. Ikharo; (2) there is no information confirming that the Pulaski County Detention Center in Illinois will be able to provide for Mr. Ikharo's complex medical needs once he arrives.

Mr. Ikharo asks the Court to reconsider the detention order requiring him to be confined to a

facility in Illinois. In the alternative, the defense asks the Court to order a representative from the U.S. Marshals office to be present at the status hearing on May 22, 2025 to answer questions from the Court and counsel concerning the specific conditions at the Pulaski County Detention Center in Illinois and during Mr. Ikharo's transportation to Illinois.

**INFORMATION CONCERNING CONDITIONS OF CONFINEMENT AND TRANSPORTATION**

The facts about Mr. Ikharo's long-standing and serious medical needs, as well as the information counsel was able to learn about the U.S. Marshals plans for transporting him more than 2,000 miles to Illinois and the lack of any information about how or even whether the Illinois county detention facility will be able to accommodate his medical needs, raise grave concerns.

1. Concerns Regarding Transportation

Mr. Ikharo is paraplegic and is paralyzed from the chest down. As a result, he has no control over his lower extremities. He does not control his bowel or bladder and has to catheter every 3-4 hours to expel urine. He also engages in a daily bowel program 3-5 times per day, during which he takes drugs and suppositories to expel feces while sitting on a commode, after which he showers in order to clean and prevent bacterial infection. *See* Fryzek Dec. ¶¶ 1-5, and Exhibits A-C attached thereto. He has frequent muscle spasms in his lower body, has dealt with kidney issues and infections, and needs help with many activities of daily living.

Counsel has learned that the plan for Mr. Ikharo's transport to Illinois involves him traveling via commercial airline to somewhere near to the Pulaksi County Detention Center, possibly taking multiple flights. *See* Fryzek Dec. ¶ 4. Mr. Ikharo will be accompanied by deputies who do not have medical training in assisting someone in Mr. Ikharo's condition. *Id.* ¶ 4. Flying from California to Illinois is not a short journey—Pulaski County Detention Center is at the southernmost point of Illinois, and it is approximately 2,000 miles away from the San Francisco Bay Area. The travel would likely take multiple hours, if not all day, depending on the connecting flights and drives to the airport and from the airport to the facility.

During this time, it appears Mr. Ikharo would not be provided any specialized medical assistance. Counsel has learned that he would be provided the opportunity to go to the bathroom with

1   deputies observing him on the commercial flight, and the opportunity to use the restroom when he is
2   in the airport. Fryzek Dec. ¶ 4. This is functionally meaningless for Mr. Ikharo, who cannot "use" a
3   restroom in any typical sense. This setup is likely to result in Mr. Ikharo soiling himself and sitting
4   for hours without the ability to clean himself or otherwise change his clothing. This could lead to
5   infection and possible septic shock, and presents a serious risk to Mr. Ikharo's health. Mr. Ikharo
6   experienced a bad infection in 2024 and was hospitalized for an extended period of time due to septic
7   shock. He fears the same thing occurring again as a result of his transport to this facility without a
8   clear plan in place for his medical care during transit. Further, housing him at the detention facility in
9   Illinois, as opposed to a medical facility in California, presents an ongoing risk every time he has to
10  travel for court appearances in the Northern District of California.

11  Although district courts are not "generally concerned with the day-to-day administration of
12  detention facilities," it is their responsibility to "safeguard a pretrial detainee's constitutional rights."
13  *United States v. Medina*, 628 F. Supp. 2d 52, 55-56 (D.D.C. 2009). "[W]hen the state takes a person
14  into custody for any reason, the Constitution imposes a duty to provide for the detainee's basic
15  human needs." *Upshaw v. Alameda County*, 377 F. Supp. 3d 1027, 1032 (N.D. Cal. 2019) (citing
16  *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989)). Further, the
17  United States Marshals Service "is responsible for the safe and secure transfer of prisoners within its
18  custody." *Vinson v. U.S. Marshals Service*, 2011 WL 3903057, at *4 (D. S.C. 2011) (citing 18 U.S.C.
19  §§ 3621, 4002, 4006–08, 4013, 4086; 28 C.F.R. §§ 0. 111(j), (k) and (o)). For Mr. Ikharo, this means
20  more than simply putting him on a commercial plane for the day and providing the "use" of a
21  bathroom.

22      2. Concerns Regarding Pulaski County Detention Center's Ability to Provide for Mr. Ikharo's
23         Medical Care

24  Counsel also is concerned about the medical facilities, care, and equipment that will be made
25  available to Mr. Ikharo at the Pulaski County Detention Center. As of the time of this filing, defense
26  counsel has not been able to reach anyone at the facility who can speak to the care that would be
27  provided for Mr. Ikharo there. *See* Fryzek Dec. ¶ 8. U.S. Marshals Deputy Aldama indicated that he
28  is unaware of the specific services or assistance provided by the facility, aside from the fact that the

MOTION TO RECONSIDER DETENTION
*IKHARO*, 24 CR 60 YGR (DMR)

facility indicated to the U.S. Marshals that they could accommodate Mr. Ikharo's condition. Given Mr. Ikharo's extensive medical equipment, some of which is specialized, and his need for medical assistance in completing various tasks of daily living, counsel is concerned that there is a lack of information as to whether this facility is able to meet Mr. Ikharo's specific needs.

"There is no question that detainees are entitled to 'adequate medical care.'" *Doe v. Kelly*, 878 F.3d 710, 722 (9th Cir. 2017) (quoting *Toussaint v. McCarthy*, 801 F.2d 1080, 1112 (9th Cir. 1986)). Pretrial detainees are protected by the Eighth and Fourteenth amendments to the Constitution against deliberate indifference to their serious medical needs. *Cravotta v. County of Sacramento*, 717 F. Supp. 3d 941, 953 (E.D. Cal. 2024). Officials act with deliberate indifference when they make intentional decisions about the conditions in which they confine the detainee that put the detainee "at substantial risk of suffering serious harm" without taking "reasonably available measures to abate that risk," which a reasonable official in the circumstances would have recognized, causing the detainee's injuries. *Id*. at 953-54. Moreover, under the Americans with Disabilities Act and Rehabilitation Act, a government agency may be liable for failing to provide reasonable accommodations to a detainee's known disability. *Id*. at 956. The Eighth Amendment also guarantees detainees "[t]he fundamental requisites of sound personal hygiene." *Toussaint v. McCarthy*, 597 F. Supp. 1388, 1411 (N.D. Cal.), aff'd in relevant part, 801 F.2d 1080 (9th Cir. 1986).

Without further assurances that the Illinois jail is able to provide for Mr. Ikharo's complex medical needs, and that the U.S. Marshals can accommodate those needs during transportation, the current plan to transport him to and detain him in Illinois risks violating his Eighth and Fourteenth amendment rights.

## CONCLUSION

As noted supra, pursuant to § 3142(f), based on the new information presented herein, Mr. Ikharo respectfully asks for the Court to reconsider the previous order confining him to the Pulaski County Detention Center in Illinois. In the alternative, the defense requests that the Court ask a representative from the U.S. Marshals office to be present at the status hearing on May 22, 2025, and to answer questions from the Court and counsel concerning the specific conditions at the Pulaski County Detention Center in Illinois and during the U.S. Marshals' transportation of Mr. Ikharo to

Illinois.

Dated:   May 19, 2025

Respectfully submitted,

JODI LINKER
Federal Public Defender
Northern District of California

             /S
KAITLYN FRYZEK
Assistant Federal Public Defender

MOTION TO RECONSIDER DETENTION
*IKHARO*,  24 CR 60 YGR (DMR)

6